IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAMS PROPERTIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 20-0615-WS-B |
| | ) |
| PARADISE OPERATIONS, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on defendants' Motion to Dismiss Amended Complaint (doc. 14). The Motion has been briefed and is now ripe.

**I.    Background.**

Plaintiff, Williams Properties, LLC, brought this action in this District Court against defendants, Paradise Operations, LLC and Justin W. Massey.[1] Williams' claims flow directly from a dispute that arose in connection with a residential real estate closing in which Williams was the seller and Paradise was the broker. That dispute culminated in state-court litigation between Williams and the buyer, with ensuing dispositive rulings being made adverse to Williams. Williams now sues Paradise and Massey in this related action in federal court, seeking a declaration that Paradise and Massey have forfeited their commission payment, and further demanding an award of damages, including the costs and expenses incurred by Williams in the underlying litigation.

---

[1] Plaintiff appears to be correct in its assertion that federal jurisdiction properly lies pursuant to the diversity provisions of 28 U.S.C. § 1332. The Amended Complaint adequately pleads complete diversity of citizenship between plaintiff and each defendant (including diverse citizenship of the members of each LLC party), and affirmatively pleads that the amount in controversy exceeds the $75,000 jurisdictional threshold, exclusive of interest and costs. (Doc. 11, ¶¶ 1-4.)

According to the well-pleaded factual allegations of the Amended Complaint, which are taken as true for purposes of defendants' Rule 12(b)(6) Motion,[2] the relevant facts are these: Williams owned a condominium unit (the "Real Property") at Turquoise Place in Orange Beach, Alabama.  In September 2018, Williams entered into a Listing Agreement for the Real Property with Paradise.  (Doc. 11, ¶ 8.)[3]  By its terms, the Listing Agreement was to be effective from September 13, 2018 until midnight on March 13, 2019, "unless the expiration date is extended in writing signed by both Seller and Broker, or by electronic means acceptable to Seller and Broker."  (Doc. 11, PageID.95.)  The Listing Agreement provided that Paradise was to serve "as the sole and exclusive Agent of [Williams] to list, market, show and otherwise offer for sale or trade the subject Property to all potential buyers."  (*Id.*)  In exchange for these services, Williams agreed to pay Paradise a 6% commission of the gross amount of any sale or agreement to sell that may be negotiated during the existence of the Listing Agreement.  (*Id.*, PageID.96.)

In February 2019, non-party Charles Rahe expressed interest in buying the Real Property.  (*Id.*, PageID.86, ¶ 10.)  Williams and Rahe agreed to a $3 million purchase price and entered into a Purchase Agreement on February 28, 2019, memorializing the terms of the sale.  (*Id.*)  The Purchase Agreement required Rahe to pay an earnest money deposit of $500,000 to the closing agent, nonparty Orange Beach Title, which he did in a timely manner.  (*Id.*, PageID.106, ¶ 25; PageID.86, ¶ 11.)  On its face, the Purchase Agreement fixed a closing date of April 10, 2019, and specified in bold type that "**[t]ime is of the essence**."  (*Id.*, PageID.106, ¶ 20.)  However, it also contained certain provisions allowing for extension of the closing date and/or the disbursement of funds under certain circumstances.  Specifically, Paragraph 20 of the Purchase Agreement reflected the parties' agreement "that disbursements shall be made at closing or no later than **2 Business days** after closing if loan documents are delayed."  (*Id.*)  And Paragraph 21

---

[2]   *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"); *but see Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

[3]   The individual defendant, Massey, is alleged to be an employee or authorized agent of Paradise, and acting within the ordinary course and scope of his duties, at all times relevant to this matter.  (*Id.*)  Massey executed the Listing Agreement on behalf of Paradise.  (Doc. 11, PageID.99.)

stated that "[a] period of **5 Business days** from the Closing Date … shall be allowed if such time is needed to comply with the CONSUMER FINANCIAL PROTECTION BUREAU Requirements, including without limitation revisions to the Closing Disclosure." (*Id.*, PageID.107, ¶ 21.) In the event of a default by Rahe (*i.e.*, if he failed to consummate the executed/accepted agreement), the Purchase Agreement gave Williams the right "to obtain the Earnest Money as liquidated damages." (*Id.*, PageID.108, ¶ 26(a).) Finally, the Purchase Agreement included language specifying that "[a]gents are not to be held liable for any conditions or non-performance of this Agreement and have not given any legal or tax advice." (*Id.*, ¶ 27.)

In connection with this transaction, Williams did not interact directly with Paradise and Massey (the brokers); instead, all communications between Williams and Paradise/Massey were through an intermediary, nonparty Chad Mitchell. (Doc. 11, PageID.85, ¶ 9.) On April 10, 2019 (the designated closing date), Mitchell informed Williams that he had learned from Massey that Rahe "could not complete the closing scheduled for that day due to an alleged paperwork delay from Mr. Rahe's lender that was funding part of the purchase and that Mr. Rahe needed a one day extension of time to close." (*Id.*, PageID.86, ¶ 15.) Williams responded by instructing Mitchell to offer a two-day extension of the closing date, in exchange for Rahe authorizing release of the $500,000 earnest money deposit to Williams on April 10. (*Id.*, ¶ 16.) When Mitchell conveyed these instructions to Paradise / Massey, Massey indicated that "he would inform Mr. Rahe's agent and they would get it done." (*Id.*, PageID.87, ¶ 17.) According to the Amended Complaint, however, Paradise / Massey failed to convey Williams' offer of a two-day extension in exchange for release of earnest money, and "instead represented to Mr. Rahe's agent that Plaintiff would agree to a one day extension of time and agree to a closing on April 11, 2019 without conditions." (*Id.*, ¶ 18.) Paradise / Massey also neglected to inform Williams (via Mitchell) of this arrangement, or to explain to Williams that under the terms of the Purchase Agreement "Mr. Rahe was automatically entitled to an extension." (*Id.,* ¶ 19.)[4]

On April 11, 2019, a dispute erupted between Williams and Rahe over the parties' obligations *vel non* to go forward with closing. For its part, Williams took the position that Rahe

---

[4] On this point, Williams expressly pleads that "[a]t no time did Mr. Massey inform Plaintiff or Mr. Mitchell that an automatic extension of the closing date was applicable." (*Id.*, PageID.88, ¶ 27.)

was in breach of the Purchase Agreement and "that it was no longer obligated to sell the Property" to him. (*Id.*, ¶ 20.) By contrast, Rahe insisted that he had the right to close on April 11 pursuant to both the Purchase Agreement and the extension granted by Paradise / Massey. (*Id.*, ¶ 21.)[5] Litigation ensued, with the title company filing suit for interpleader in Baldwin County Circuit Court regarding the fate of Rahe's earnest money deposit (the "State Court Action"). (*Id.*) On December 10, 2020, the state court entered summary judgment in favor of Rahe and against Williams regarding the parties' respective claims for breach of the Purchase Agreement. (*Id.*, PageID.88, ¶24.) In the order, which is attached to the Amended Complaint, the state court reasoned, in part, as follows:

> "Had Williams, through its agent Justin Massey, represented to Rahe that Williams would not accept the funds and complete the closing on April 11, 2019 (instead of representing they would accept the funds and complete the closing on April 11, 2019 as he did), Rahe would have taken steps to have the balance of the funds delivered from other sources so that the closing could have been consummated on April 10, 2019.
>
> "… Paragraphs 20 and 21 of the Agreement each clearly and unambiguously provide extensions to the completion of the closing on the purchase of the Property that apply here. By completing the Closing on April 11, 2019, one day after the April 10, 2019, closing date in the Agreement, Rahe closed on the purchase of the Property within the contractually allowed extensions.
>
> "The Court finds that Williams defaulted on the Agreement by failing to consummate the sale where the Agreement clearly and unambiguously provided for an automatic extension to the closing under the facts of the case."

(Doc. 11, PageID.120-22, ¶¶ 24, 29-30.) On that basis, the state court awarded Rahe specific performance of the Purchase Agreement, and ordered the parties to close on the sale and of the Real Property pursuant to the terms of that Agreement within 30 days. (*Id.*, PageId.123-24.) That closing apparently took place on December 30, 2020, just one day before Williams initiated these federal proceedings against Paradise and Massey.

Based on these alleged facts and circumstances, Williams asserts state-law claims against defendants on theories of breach of contract (Count I), breach of fiduciary duty (Count II), and

---

[5] It is apparently undisputed that Williams refused to move forward with the closing on April 11, 2019 unless Rahe increased the purchase price of the Real Property by $200,000 above and beyond the $3 million sum previously agreed upon in the Purchase Agreement. Rahe declined to do so, and Williams declined to close. (Doc. 11, PageID.120, ¶ 23; doc. 14, PageID.132, ¶ 14.)

negligence (Count III). Williams' theory of liability as articulated in the Amended Complaint is that if Paradise and Massey had not been in breach of the contract and their fiduciary duties, and if they had not been negligent, then Williams "would not have taken the position that it was no longer obligated to sell the Property to Mr. Rahe. This position … ultimately resulted in damages to Plaintiff." (Doc. 11, PageID.89-91, ¶¶ 33, 39, 45.)  The Amended Complaint delineates the following relief sought: (i) a declaratory judgment that Paradise and Massey have forfeited, and are not otherwise entitled to, the commission payment specified in the Listing Agreement; and (ii) damages in the form of Williams' "costs and expenses of litigation with Mr. Rahe in the Baldwin County suit" and "other damages and costs that may be proven at trial." (*Id.*, PageID.92, ¶¶ 48-49.)  Defendants now move for dismissal of each of Counts I, II and III on the ground that they fail to state cognizable claims for relief under applicable law.

**II.     Analysis.**

    **A.     Governing Legal Standard.**

Defendants' Motion to Dismiss argues that each claim asserted in the Amended Complaint fails to state a claim upon which relief can be granted because it is inadequately pleaded. To satisfy Rules 8(a) and 12(b)(6), Fed.R.Civ.P., a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).  "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

### B. Count I (Breach of Contract).

According to the Amended Complaint, Paradise breached the Listing Agreement in the following respects: (i) by failing to present Rahe with Williams' conditional offer to extend the closing date and instead making an unauthorized unconditional offer to extend it; (ii) by failing to notify Williams that Massey had given Rahe an unconditional offer to extend the closing date and by failing to apprise Williams that the Agreement entitled Rahe to such an unconditional extension; and (iii) by failing to advise Williams about Rahe's reason for requesting an extension and its implications under the Purchase Agreement. (Doc. 11, PageID.89, ¶¶ 30-32.) Plaintiff's contention is that these omissions were in breach of defendants' contractual obligation to act as Williams' sole and exclusive agent in connection with the Real Property transaction. Defendants correctly argue that Count I suffers from multiple insuperable defects.

As an initial matter, defendants argue that dismissal of the breach of contract claim is warranted under Rule 12(b)(6) because these alleged breaches occurred outside the term of the Listing Agreement. Relevant facts from the Amended Complaint and its exhibits confirm the accuracy of this assertion. After all, the Listing Agreement unambiguously provided that it would be effective from September 13, 2018 until March 13, 2019, "unless the expiration date is extended in writing signed by both Seller and Broker, or by electronic means acceptable to Seller and Broker." (Doc. 11, PageID.95.) No such written or electronic extension is alleged to exist. Moreover, all of the alleged breaches upon which Count I is predicated relate to defendants' actions on April 10 and 11, 2019, several weeks after the expiration of the Listing Agreement. Plaintiff offers neither facts nor any legal argument that might render Count I cognizable on a theory of breach of the written Listing Agreement which had already expired by its express terms several weeks before the alleged breaches ever happened.[6]

---

[6] At best, Plaintiff floats a vague suggestion that there was an implicit contract between Williams and Paradise after March 13, 2019 because "Defendants were involved in the transaction between Plaintiff and a third party after March 13, 2019." (Doc. 17, PageID.163.) However, plaintiff fails to explain how the mere fact of Paradise's continued involvement in the sale transaction necessitates ongoing contractual obligations running from Paradise to Williams. The Court will not speculate as to a legal argument that plaintiff has neither explained nor even directly articulated. However, any contention by plaintiff that an implied agency relationship (Continued)

Next, defendants assert that Count I fails to state a claim for breach of contract because the well-pleaded allegations of the Amended Complaint fail to identify any contractual duty that defendants breached. The Court agrees. By the terms of the Amended Complaint, Count I is grounded in the theory that "Defendants had a contractual duty to act as Plaintiff's agent and were therefore obligated to present all offers made by Plaintiff to Mr. Rahe." (Doc. 11, PageID.88, ¶ 29.) In neither its pleading nor its brief does Williams identify the specific provision in the Listing Agreement that it contends gives rise to such a duty. The actual duties delineated in the Listing Agreement were for Paradise to act as "the sole and exclusive Agent of [Williams] **to list, market, show and otherwise offer for sale or trade the subject Property to all potential buyers.**" (Doc. 11, PageID.95 (emphasis added).) There is no allegation in the Amended Complaint that Paradise / Massey failed to list, market, show and otherwise offer for sale or trade the Real Property to all potential buyers; therefore, Count I cannot logically be predicated on a breach of that duty. Likewise, the Listing Agreement obligated Paradise "to use reasonable efforts in marketing the Property in accordance with the terms of this Agreement." (*Id.*) There is no allegation in the Amended Complaint that Paradise / Massey failed to do so. Significantly, in briefing the Rule 12(b)(6) Motion, plaintiff has failed to respond in any meaningful way to this argument for dismissal of Count I. Accordingly, the Court finds that Count I is properly dismissed for the additional reason that the well-pleaded factual allegations of the Amended Complaint do not support a reasonable inference that Paradise / Massey breached any contractual duty owed to Williams.

Furthermore, defendants contend that Count I should be dismissed pursuant to the exculpatory clause contained in the Purchase Agreement, wherein Williams agreed, with respect to the sale of the Real Property to Rahe, "to discharge and release Agents from any and all

---

existed outside the Listing Agreement would necessarily fail as a matter of Alabama law. *See Rosenthal v. JRHBW Realty, Inc.*, 303 So.3d 1172, 1199 (Ala. 2020) ("[T]here cannot be an implied contract of agency between a broker and/or licensee and a consumer. … Accordingly, Mark's allegation of a breach of contract by Valekis apart from the agency agreement is without merit."); Ala. Code § 34-27-82(b) ("An agency relationship shall not be assumed, implied, or created without a written bilateral agreement establishing the terms of the agency relationship."). Simply put, Alabama law makes clear that no agency relationship could exist between Williams and Paradise / Massey outside the scope of a written agreement. And uncontroverted facts from the pleadings confirm that the written agreement in question (*i.e.*, the Listing Agreement) had expired at the time of the alleged breaches. As such, Count I cannot stand, as a matter of law.

claims, demands, damages, actions, causes of action or suits at law arising in any way from this Agreement related to the property …. Agents are not to be held liable for any conditions or non-performance of this Agreement and have not given any legal or tax advice." (Doc. 11, PageID.108, ¶¶ 27, 30.) Plaintiff's only argument against the preclusive effect of this contractual release is that "a settlement and release of claim does not normally cover a claim based on events that have not yet occurred." (Doc. 17, PageID.164.) But this is not a "settlement and release of claim." It is an exculpatory clause, and exculpatory clauses may or may not be violative of public policy. *See, e.g., Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1344 (11th Cir. 2019) ("Although not looked upon with favor by Florida courts, … an exculpatory clause is enforceable so long as (1) the contracting parties have equal bargaining power and (2) the clause's provisions are clear and unambiguous ….") (citations and internal quotation marks omitted); *Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*, 398 F.3d 1261, 1264-65 (11th Cir. 2005) ("In Georgia, a party may exempt itself from its own simple negligence through exculpatory clauses so long as the clause is not void as against public policy. … Exculpatory clauses in fitness club contracts are generally not void as against public policy …; however, they must be clear and unambiguous.") (citations and internal quotations omitted); *Reece v. Finch*, 562 So.2d 195, 199-200 (Ala. 1990) (recognizing that, under Alabama law, pre-automobile race releases are valid and consistent with public policy, but are invalid and contrary to public policy as to future wanton conduct or future intentional tortious conduct); *Gilbert v. Alarm One Inc.*, 426 F. Supp.3d 1220, 1226 n.4 (N.D. Ala. 2019) ("To determine if an exculpatory clause is invalid as contrary to public policy, Alabama courts apply a six-part test.").[7]

In opposition to the Motion to Dismiss, plaintiff has not explained why the particular releases for the benefit of Paradise / Massey in Paragraphs 27 and 30 the Purchase Agreement are or may be contrary to public policy. Instead, plaintiff articulates only a blanket contention

---

[7] The criteria used to assess whether an exculpatory clause is at odds with public policy in Alabama include such factors as the parties' relative bargaining positions, whether a contract of adhesion is involved, and whether the weaker party was subject to the stronger party's control. *See, e.g., Morgan v. South Central Bell Telephone Co.*, 466 So.2d 107, 117 (Ala. 1985). There is no indication and no reason to believe that any of those factors would in any way favor striking down the exculpatory clause in the Purchase Agreement as contrary to public policy.

that such releases are *per se* invalid as against public policy. Given the well-settled law that exculpatory clauses may be enforceable, that argument is unpersuasive; therefore, on these briefs, the Court has no reason not to enforce the exculpatory clause to which Williams agreed in the Purchase Agreement so as to negate liability for Paradise / Massey in connection with the Purchase Agreement or anyone's non-performance of same.

Finally, defendants maintain that Count I is due to be dismissed because plaintiff's claimed damages arising from the purported breach of contract are speculative and therefore unrecoverable. Of course, damages are an essential element of a breach of contract claim under Alabama law. *See, e.g., Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009) ("The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) ***resulting damages***.") (emphasis added). As pleaded in the Amended Complaint, the damages that Williams claims to have incurred as a result of Paradise / Massey's purported breach of the Listing Agreement consist of "costs and expenses of litigation with Mr. Rahe in the Baldwin County Suit." (Doc. 11, PageID.92, ¶ 49.) But those damages are not cognizable on these factual allegations. As a matter of black-letter law, "damages [for breach of contract] may not be awarded where they are remote or speculative. … Damages may not be based on speculation." *Systrends, Inc. v. Group 8760, LLC*, 959 So.2d 1052, 1075 (Ala. 2006) (citations omitted); *see also Martin v. Battistella*, 9 So.3d 1235, 1241 (Ala. 2008) ("Damages can be awarded only where they are reasonably certain and not based upon speculation.") (citation omitted).

The nexus between the alleged breach (*i.e.*, Paradise / Massey's failure to present a conditional offer to Rahe for a one-day extension of the closing date) and the alleged harm (*i.e.*, Williams' costs and attorney's fees incurred in the State Court Action) is exceedingly tenuous. To find it, one would either have to (i) assume that Rahe would have accepted the conditional offer if it had been communicated, despite the dearth of allegations that he would have done so; or (ii) accept a chain of logic that, based on Rahe's rejection of that conditional offer, it was reasonably foreseeable that Williams would ignore the automatic extension provisions of the Purchase Agreement, demand an additional $200,000 payment to close on April 11, 2019, become embroiled in litigation with Rahe over rights to the earnest money, and have summary judgment entered against it in the State Court Action. The factual and logical gaps between the

alleged breach and the purported "resulting harm" are too vast for that claim to be sustainable here. As such, Williams' attempt to cast its attorney's fees and litigation expenses in the State Court Action as "resulting harm" from the alleged breach of contract that it may properly recover in Count I is doomed to fail. In briefing the Rule 12(b)(6) Motion, plaintiff has advanced no argument to the contrary. In the absence of "resulting harm," Count I does not state a viable claim for breach of contract under Alabama law.

### C. Counts II (Breach of Fiduciary Duty) and III (Negligence).

Counts II and III of the Amended Complaint are framed as claims for breach of fiduciary duty and negligence. With respect to Count II, Williams maintains that Paradise / Massey were fiduciaries under Alabama law, pursuant to which they owed plaintiff duties of loyalty, utmost good faith, reasonable care and diligence, and full disclosure of all material information. (Doc. 11, PageID.89-90, ¶ 35.) According to Williams, defendants breached these fiduciary duties by failing to present the conditional offer to Rahe, misrepresenting Williams' offer as an unconditional offer to extend the closing date, failing to notify Williams of the unconditional offer given, failing to inform Williams that Rahe was entitled to an extension, and failing to advise Williams of the implications of Rahe's request for extension under the Purchase Agreement. (*Id.*, PageID.90, ¶¶ 36-38.) In Count III, Williams pleads that defendants owed it "a duty of care to properly advise Plaintiff as Plaintiff's agent in connection with the real estate transaction with Mr. Rahe." (*Id.*, PageID.91, ¶ 41.) The Amended Complaint alleges that Paradise / Massey breached this duty of care in the same enumerated ways that they are alleged to have breached the fiduciary duties described in Count II. (*Id.*, ¶¶ 42-44.)

Defendants' principal argument for dismissal of Counts II and III is that, as a matter of Alabama law, they owed no duties to Williams outside the scope of the written Purchase Agreement, such that it can have no viable claim against them for breach of fiduciary duty or negligence.[8] This contention hinges on the Alabama Real Estate Consumers Agency and

---

    8    Of course, the existence of a duty is an essential element of both Count II and Count III under applicable law. *See, e.g., Aliant Bank, a Division of USAmeribank v. Four Star Investments, Inc.*, 244 So.3d 896, 907 (Ala. 2017) ("The elements of a negligence claim are a duty, a breach of that duty, causation, and damage. … Similarly, the elements of a breach-of-fiduciary-duty claim are the existence of a fiduciary duty, a breach of that duty, and damage suffered as a result of that breach.") (citations and internal quotation marks omitted). "The determination whether a duty exists is generally a question of law for the court to decide." *Id.* at 908 (citation omitted).

Disclosure Act, Ala. Code §§ 34-27-80 *et seq.* ("RECAD").  Under that statute, defendants plainly qualify as licensees, which are defined as "[a]ny broker, salesperson, or company," with "broker" being defined as "[a]ny person licensed as a real estate broker."  Ala. Code § 34-27-81(2), (10).  Critically, RECAD provides that no agency relationship exists between a "licensee" such as Paradise / Massey and a consumer such as Williams without a written bilateral agreement, to-wit:

> "At the initial contact between a licensee and the consumer and until such time a broker enters into a specific written agreement to establish an agency relationship with one or more of the parties to a transaction, the licensee shall not be considered an agent of that consumer.  ***An agency relationship shall not be assumed, implied, or created without a written bilateral agreement establishing the terms of the agency relationship.***"

Ala. Code § 34-27-82(b) (emphasis added); *see also Rosenthal v. JRHBW Realty, Inc.*, 303 So.3d 1172, 1188 (Ala. 2020) ("In short, as § 34-27-82(b) makes clear, that cannot be an implied contract of agency between a broker and/or licensee and a consumer. … Accordingly, [consumer]'s allegation of a breach of contract by [broker] apart from the agency agreement is without merit.").  Moreover, RECAD clarifies that "[t]he duties of licensees as specified in this article … shall supersede any duties of a licensee to a party to a real estate transaction which are based upon common law principles of agency to the extent that those common law duties are inconsistent with the duties of licensees as specified in this article."  Ala. Code § 34-27-87.

Defendants' point is simple: There was no written bilateral agreement between defendants and plaintiff as of April 10-11, 2019, when the alleged breaches of duty took place, because the Listing Agreement had expired by its terms nearly a month earlier.  As such, there was no agency relationship (implied or otherwise) running from Paradise / Massey to Williams at that time, and to impose any common law duties on defendants in that circumstance would be inconsistent with the duties imposed on defendants by RECAD, and therefore improper.  Under a straightforward reading of RECAD, defendants' logic is unassailable that, with respect to any agency relationship, "Defendants had no duty to do anything for Plaintiff after March 13, 2019." As a result, Counts II and III fail as a matter of law for want of a duty.  (Doc. 14, PageID.147.)

In opposition to the Motion to Dismiss as to Counts II and III, Williams first cites numerous Alabama authorities dating back at least three decades (and, in some cases, more than a century) to show that Alabama common law previously imposed duties on real estate brokers in accordance with the law of agency.  (Doc. 17, PageID.165.)  Of course, RECAD went into

effect on August 1, 1996, so the Alabama courts' earlier opinions concerning common-law duties placed on real estate brokers are unilluminating as to the state of the law today without taking RECAD into consideration. In apparent recognition of this inevitable conclusion, plaintiff emphasizes that RECAD only superseded common-law duties on real estate brokers "to the extent that those common law duties are inconsistent with the duties of licensees as specified in this article." Ala. Code § 34-27-87. Plaintiff insists that its "negligence and breach of fiduciary duty claims are not superseded because they are not inconsistent with the duties Defendants owed Plaintiff under RECAD," because embedded in those claims are the sorts of duties enumerated in Alabama Code §§ 34-27-84 and 34-27-85. (Doc. 17, PageID.166-67.) The trouble with this line of reasoning is that Williams disregards the RECAD provision specifying that "[a]n agency relationship shall not be assumed, implied, or created without a written bilateral agreement establishing the terms of the agency relationship." Ala. Code § 34-27-82(b). To impose the kinds of duties articulated in Counts II and III on Paradise / Massey in the absence of an unexpired, written, bilateral agreement would be inconsistent with § 34-27-82(b), and therefore inconsistent with RECAD and superseded by the plain language of § 34-27-87. Plaintiff offers no rejoinder to this line of reasoning that might give rise to the requisite duty for Counts II and III to be viable under Alabama law.[9]

Even if Williams could establish the existence of a duty running from Paradise / Massey to it as of April 10-11, 2019, defendants argue in their Motion to Dismiss that Counts II and III would nonetheless fail because (i) there are no factual allegations supporting a conclusion that any such duty was breached, (ii) plaintiff cannot show that any damages were caused by such a

---

[9] Careful reading of RECAD and accompanying case law raises the possibility that Paradise / Massey might be considered a "transaction broker" for RECAD purposes. By statute, a "transaction broker" is defined as "[a] licensee who assists one or more parties in a contemplated real estate transaction without being an agent or fiduciary or advocate for the interest of that party to a transaction." Ala. Code § 34-27-81(17). RECAD further specifies that "[i]n the absence of a signed brokerage agreement between the parties, the transaction brokerage relationship shall remain in effect." Ala. Code § 34-27-82(e). But Williams has not argued that Paradise / Massey qualify as "transaction brokers" under RECAD, much less that the limited statutory duties imposed on transaction brokers pursuant to § 34-27-82(f) would encompass the purported duties identified in Counts II and III. The Court declines to develop this theory of liability for plaintiff, when it is identified neither in the pleadings nor plaintiff's Rule 12(b)(6) briefing. At any rate, it is unclear how any of the limited duties imposed on transaction brokers under RECAD could support the particular breach of fiduciary duty and negligence claims advanced by Williams in Counts II and III of the Amended Complaint.

breach, and (iii) the exculpatory clause in the Purchase Agreement released defendants from any liability to Williams in connection with the sale transaction. The second and third of these arguments have already been addressed *supra* in the analysis for Count I, and apply with equal force to Counts II and III.[10] The damages claimed by Williams – namely, its legal fees and expenses in the Baldwin County Suit – are the result of its refusal to close the sale on April 11, 2019, when Rahe had an absolute right to the requested extension. Even under plaintiff's version of the facts as pleaded in the Amended Complaint, Williams had no reasonable basis for refusing to close and attempting to extract another $200,000 from Rahe as a condition of going forward with the closing one day later when Rahe had an absolute contractual right to the requested extension. A plain reading of the Purchase Agreement, combined with the facts that plaintiff itself alleges in the Amended Complaint, would have shown Williams that its position was legally untenable and a surefire loser in any subsequent legal proceeding against Rahe. The state-court litigation – and Williams' accrual of substantial attorney's fees and costs therein – followed directly from Williams' actions, not from defendants' alleged breaches. Therefore, Counts II and III fail for want of causation. Even if they did not, the exculpatory clause in the Purchase Agreement releases defendants from liability for Counts II and III for the same reasons

---

[10] The no-breach argument likewise is meritorious. At its core, plaintiff's theory of liability appears to be that it faults defendants for not furnishing legal advice to Williams as to the automatic extension provisions contained in Paragraphs 20 and 21 of the Purchase Agreement. But nothing in the Listing Agreement or in RECAD could possibly impose a duty on Paradise / Massey to advise Williams as to the meaning of the plain terms of the Purchase Agreement. Of course, there can be no breach where there is no duty.

Nor does plaintiff's attempt at hair-splitting in its brief shore up its position. In the Amended Complaint, Williams admits that defendants informed plaintiff on April 10, 2019 that Rahe "could not complete the closing scheduled for that day due to an alleged paperwork delay from Mr. Rahe's lender that was funding part of the purchase and that Mr. Rahe needed a one day extension of time to close." (Doc. 11, PageID.86, ¶ 15.) Those admitted facts confirm that Paradise / Massey accurately and timely conveyed all information that Williams reasonably needed to ascertain Rahe's right to an automatic extension under Paragraphs 20 and 21 of the Purchase Agreement. In a ruling appended to the Amended Complaint, the state-court judge expressly found that the plain language of that Purchase Agreement entitled Rahe to an automatic extension under those circumstances. (Doc. 11, PageID.119, ¶ 18.) Simply put, it breached no duty identified by plaintiff for defendants not to advise Williams of Rahe's right to an automatic extension in that event. Yet that appears to be the centerpiece of plaintiff's liability theory. (Doc. 17, PageID.163-64.)

that it does for Count I.  For these reasons, then, as well as the absence of a duty, the Motion to Dismiss is properly granted as to Counts II and III.

### III. Conclusion.

For all of the foregoing reasons, the Court agrees with defendants that each and every count in the Amended Complaint fails to state a claim upon which relief can be granted, and that dismissal is therefore appropriate under Rule 12(b)(6), Fed.R.Civ.P.  Defendants' Motion to Dismiss (doc. 14) is **granted**, and the Amended Complaint is **dismissed with prejudice**.  A separate Judgment will enter.

DONE and ORDERED this 1st day of April, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE